UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CANFIELD SCIENTIFIC, INC.,

    Plaintiff,

v.

DR. RHETT DRUGGE, et al.,

    Defendants.

Civil Action No. 16-4636 (JMV)

OPINION AND ORDER

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on a motion by Plaintiff Canfield Scientific, Inc. ("Canfield" or "Plaintiff") to stay this action pending *inter partes* review before the Patent Trial and Appeal Board ("PTAB") [Dkt. No. 34]. Defendants Dr. Rhett Drugge and Melanoscan LLC (collectively "Defendants" or "Melanoscan") oppose Plaintiff's motion [Dkt. No. 36]. For the reasons set forth below, Plaintiff's motion to stay [Dkt. No. 34] is **GRANTED**.

**I.    BACKGROUND**

Defendant Melanoscan is the owner of U.S. Patent No. 7,359,748 ("the '748 patent"), titled "Apparatus for Total Immersion Photography." Compl. at ¶ 11. Dr. Drugge is the inventor of the '748 patent and the founder of Melanoscan. *Id.* at ¶ 4. The '748 patent relates to the detection, diagnosis and treatment of skin cancer. Canfield is "a global leader in imaging systems, services, and products for scientific research and healthcare applications." *Id.* at ¶ 2. Among the products sold by Canfield is an imaging system called the Vectra WB360 (the "Vectra"). *Id.* at ¶ 13. Dr. Drugge believes that the Vectra violates the '748 patent. According to Canfield, when Dr. Drugge learned that certain Canfield customers had purchased the Vectra, Dr. Drugge emailed one of Canfield's customers along with other doctors and institutions in the dermatological field on June

1

18, 2016, stating his belief that the Vectra violated the '748 patent and encouraging the recipients of the email to cease all use of the device. *Id.* at ¶¶ 15-17. Subsequently, on July 15, 2016, an attorney for Melanoscan sent a letter to Canfield accusing Canfield of infringing on the '748 patent and a letter to another of Canfield's clients requesting that the client refrain for purchasing any additional systems from Canfield. *Id.* at ¶¶ 21-22.

Plaintiff filed its Complaint on August 1, 2016. Dkt. No. 1. The Complaint alleges five causes of action: (1) declaratory judgment of non-infringement of the '748 patent; (2) tortious interference with contractual and prospective business advantage; (3) unfair competition under the Lanham Act § 43(a) – 15 U.S.C. § 1125(a); (4) commercial disparagement under New Jersey common law; and (5) unfair competition under New Jersey common law. In response, Defendants filed a motion to dismiss Counts Two through Five of Plaintiff's Complaint. *See* Dkt. No. 15. The Court granted Defendants' motion without prejudice as to Counts Two and Four and as to the allegations related to the two July 15, 2016 letters in Counts Three and Five. Dkt. No. 21. Defendants' motion was denied as to the allegations concerning the June 18, 2016 email in Counts Three and Five. *Id.* Although the Court granted Plaintiff leave to file an amended complaint within thirty days, Plaintiff did not do so. Accordingly, all that remains of Plaintiff's Complaint is Plaintiff's claim for declaratory judgment of non-infringement and Plaintiff's claims for unfair competition related to the June 18, 2016 email. On June 9, 2017, Defendants filed their Answer along with a Counterclaim stating a single cause of action for infringement of the '748 patent. *See* Dkt. No. 23. On June 30, 2017, Plaintiff asserted an additional claim for declaratory judgment of invalidity. *See* Dkt. No. 25.

## II.  DISCUSSION

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Depomed Inc. v. Purdue Pharma L.P.*, C.A. No. 13-0571 (JAP), 2014 WL 3729349, at *2 (D.N.J. July 25, 2014) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). In particular, "[t]he decision to stay a patent case in which a reexamination by the PTO has been requested is within the discretion of the district court." *Thermolife Int'l, LLC v. Prosource Performance Prod.*, C.A. No. 15-2037 (FLW/LHG), 2015 WL 9480023, at *6 (D.N.J. Dec. 29, 2015) (citing cases from the Federal Circuit and the District of New Jersey).

Because staying a case pending IPR proceedings offers both costs and benefits, courts traditionally balance the following three factors in determining whether to grant a stay: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and a trial date has been set." *Depomed*, 2014 WL 3729349, at *2 (citations omitted); *see also Thermolife*, 2015 WL 9480023, at *6 (quoting *Mondis Tech. Ltd. v. LG Elecs., Inc.*, C.A. No. 15-4431 (SRC/CLW), 2015 WL 7012747, at *6 (D.N.J. Nov. 12, 2015)). While courts in this District have noted a "generally liberal policy toward granting stays pending patent reexamination by the PTO," *Mondis Tech.*, 2015 WL 7012747, at *5 (citations omitted), a stay is not automatic as a "stay in litigation inevitably causes further delay in an already lengthy process, and could potentially harm [the opposing party]." *Id.* (quoting *Brass Smith, LLC v. RPI Indus., Inc.*, C.A. No. 09-06344 (NLH/JS), 2010 WL 4444717, at *2 (D.N.J. Nov. 1, 2010)). "The party seeking a stay of civil litigation bears the burden to show that the stay would be appropriate." *Id.* (citing *Landis*, 299 U.S. at 255).

Prior to addressing the individual factors, the Court notes that the parties' briefing on Plaintiff's present motion was submitted prior to the PTAB's institution of *inter partes* review. Accordingly, the large portion of Defendants' opposition to Plaintiff's motion arguing that Plaintiff's petition was somehow barred or would be unlikely to succeed is no longer applicable.

**A. Prejudice to the Non-Moving Party**

In determining whether a stay will likely result in undue prejudice to the non-moving party or place them at a clear tactical disadvantage, the Court considers a number of factors including "the timing of the request for reexamination, the timing of the request for [a] stay, the status of the reexamination proceedings and the relationship of the parties." *Depomed*, 2014 WL 3729349, at *2 (quoting *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011)).

As to the timing of Plaintiff's petition and the present motion to stay, Defendants assert that Plaintiff's delay in moving for *inter partes* review evidences Plaintiff's "dilatory motive" in the filing of its petition. Dkt. No. 36 at p. 25. Plaintiff's claim for invalidity was first asserted in this action on June 30, 2017. *See* Dkt. No. 25. Plaintiff filed its petition for *inter partes* review on September 21, 2017. The Court held an initial scheduling conference with the parties and entered a Pretrial Scheduling Order in this matter on September 29, 2017. *See* Dkt. No. 33. Pursuant to Plaintiff's statements during the initial scheduling conference notifying Defendants and the Court of its intention to move for the presently sought stay, the Court included a deadline in the Pretrial Scheduling Order of November 9, 2017 for Plaintiff to file the present motion. *See Id.* at ¶ 32. Plaintiff filed its motion to stay on the November 9, 2017 deadline. Despite Defendants' contentions to the contrary, the Court does not find that the approximately three-month delay between Plaintiff's assertion of its invalidity claim and the filing of its IPR petition or the less than

4

two-month delay between the filing of the petition and the present motion demonstrates a dilatory motive on Plaintiff's part. Accordingly, the Court finds this sub-factor to be neutral.

Turning to the status of the IRP proceedings, the Court find that this sub-factor favors Defendants. On March 30, 2018, the PTAB instituted review as to the claims challenged by Plaintiff. Under the governing statute, the presently instituted IRP proceedings are not expected to be fully resolved until March 2019, with a possibility of a six-month extension for "good cause." 35 U.S.C. 316(a)(11); *see also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, C.A. No. 15-691 (LPS), 2016 WL 3437605, at *5 (D. Del. June 17, 2016) (finding the "status of IPR" sub-factor weighed against a stay because the recently instituted IPR and the possibility of a six-month extension for good cause and/or two or more years of IPR appellate proceedings would be prejudicial to the non-movant).

Under the final sub-factor, the Court considers the relationship between the parties. Courts are generally reluctant to grant a stay in a matter where the parties are direct competitors on the rationale that a stay would likely cause the non-movant to lose substantial profits and goodwill on the market. *See, e.g., Depomed*, 2014 WL 3729349, at *4 (quoting *Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744 (GMS), 2013 WL 3353984, at *3 (D. Del. July 2, 2013)); *Thermolife*, 2015 WL 9480023, at *6 (finding because the parties are direct competitors, a stay of the litigation would result in prejudice to the non-movant). The presence of multiple active firms in the relevant market, however, may decrease the likelihood of such harm befalling the plaintiff. *Id.* at *3; *Air Vent, Inc. v. Owens Corning Corp,* No. 10–1699–TFM, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012).

While it is clear that the parties are competitors, Defendants do not assert that they are direct competitors and it is unclear whether there are other systems besides the Vectra which

compete with Melanoscan. "Where the question of 'direct competition' remains unanswered, courts have sometimes considered whether the plaintiff sought a preliminary injunction." *Neste Oil Oyj,* 2013 WL 424754, at *3; *see also SenoRx, Inc.,* 2013 WL 144255, at *8; *see also Ever Win Int'l Corp. v. Radioshack Corp.,* No. 11–1104–GMS–CJB, 2012 WL 4801890, at *7 (D. Del. Oct. 9, 2012). The decision by a litigant to seek such injunctive relief may suggest that the parties, in fact, do compete and that real prejudice will flow from the imposition of a stay. *See SenoRx, Inc.,* 2013 WL 144255, at *8. Here, Defendants did not seek a preliminary injunction against Plaintiff and there has been no assertion or evidence that the parties are "direct competitors." *See Neste Oil OYJ v. Dynamic Fuels, LLC*, No. CV 12-1744-GMS, 2013 WL 3353984, at *4 (D. Del. July 2, 2013). Accordingly, the Court finds this sub-factor to be neutral.

Based upon the foregoing, with one of the sub-factors weighing against a stay and the other two being neutral, the Court finds that the overall consideration of prejudice caused to Defendants weighs against a stay.

### B. Simplification of the Issues

Courts have noted several ways in which a stay pending IPR proceedings can simplify a pending litigation: (1) a review of all prior art presented to a court by the PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent be found by the PTO; (4) encouragement to settle based upon the outcome of the PTO reexamination; (5) an admissible record at trial from the PTO proceedings which would reduce the complexity and length of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court. *Eberle v. Harris*, C.A. No. 03-5809 (SRC), 2005

WL 6192865, at *2 (D.N.J. Dec. 8, 2005) (citing *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992)).

The "issue simplification" factor does not require a complete invalidation of all asserted claims by the IPR proceedings and simplification can occur even where "some or all of the claims are found not invalid." *See Depomed*, 2014 WL 3729349, at *5 (quoting *Softview LLC v. Apple Inc.*, C.A. No. 10-389 (LPS), 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013)). Issue simplification can occur where the number of asserted claims and patents are reduced due to invalidation or the estoppel effect of the IPR proceedings. *Id.*; *see also* 35 U.S.C. § 315(2)(e) (barring the petitioner in an IPR proceeding that results in a final decision by the PTO from asserting in a civil action invalidity arguments that the petitioner raised or reasonably could have raised during the IPR proceedings). Therefore, the number of claims asserted in the pending litigation relative to the number of claims subject to the IPR proceedings is a significant factor for the Court to consider. *See Depomed*, 2014 WL 3729349, at *5 ("The more the scope of the litigation exceeds the scope of the IPR proceedings, the less likely the IPR proceedings and requested stay will simplify the issues.") (citing *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, C.A. No. 12-1461 (LPS/CJB), 2014 WL 3819458, at *3 (D. Del. Jan. 15, 2014)).

Defendants have asserted 41 claims in this matter related to the '748 patent. Out of the 41 asserted claims, 11 are under IPR proceedings.[1] According to Defendants, the 11 claims under IRP proceedings do not represent a large enough portion of the claims at issue in this case to justify a stay. In response, Plaintiff claims that its IPR petition challenges all of the independent claims in the '748 patent and that Defendants "decided to strategically assert an additional 30 dependent

---

[1] Although Defendants state that 11 claims are under IPR proceedings, it appears that Plaintiff's IPR petition requests *inter partes* review of claims 1-8, 11, 30, 32-34, 46, and 51, which amounts to fifteen claims. Because this discrepancy does not affect the Court's decision, the Court will give Defendants the benefit of accepting their count of eleven claims for purposes of this analysis.

7

claims" after Plaintiff filed its IPR petition in order to support their present argument against a stay. Dkt. No. 45 at p. 8. Defendants further assert that the outcome of the IPR proceedings will not affect Plaintiff's remaining unfair competition claims.

Although Defendants are correct that the claims for which *inter partes* review has been instituted do not represent all claims at issue in this litigation, the Court finds that the resolution of the IPR proceedings will significantly simplify the issues in this case. First, all of the independent claims in the '748 patent are under IPR review and the remaining claims asserted in this action are dependent upon those independent claims. Secondly, it appears that the reason that the non-overlapping claims were not included in Plaintiff's petition for *inter partes* review is that when that petition was filed, Defendants had not yet asserted those claims. "The absence . . . of those claims from the *inter partes* review is therefore chargeable to [Defendants], not to [Plaintiff]." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *7 (E.D. Tex. Mar. 11, 2015). Finally, while Plaintiff's remaining unfair competition claims will not be directly affected by the outcome of the IPR proceedings, the unfair competition claims, which Defendants characterize as relating "exclusively to Defendants' alleged dissemination of a single email in June 2016" will likely require minimal discovery and proceed quickly to final disposition. Based upon the foregoing, and in light of the fact that the PTAB has instituted review of all of the claims included by Plaintiff in its petition, the Court finds the simplification of the issues which will result from the resolution of the IPR proceedings weighs in favor of a stay.

**C. Stage of the Litigation**

"Courts are more willing to stay a case in its early stages pending IPR proceedings because it can advance judicial efficiency by conserving resources expended by the parties and the Court on claims that may subsequently be found invalid." *Eagle View Techs., Inc. v. Xactware Sols.,*

*Inc.*, No. CV 15-7025 (RBK/JS), 2016 WL 7165695, at *8 (D.N.J. Dec. 7, 2016) (citing *Toshiba Samsung*, 2016 WL 3437605, at *3). On the other hand, "when a matter has already reached its later stages with discovery being complete and/or a trial date being set, requests to stay are less frequently granted." *Depomed*, 2014 WL 3729349, at *6. Where the parties and the court have expended "substantial time and resources ... in [the] case to scheduling and the resolution of discovery disputes" and other motion practices, the "litigation stage" factor weighs against a stay even at a relatively early stage. *SoftView LLC v. Apple Inc.*, C.A. No. 10-389 (LPS), 2012 WL 3061027, at *4 (D. Del. July 26, 2012).

Here, written discovery is still ongoing, depositions have not yet begun, and no trial date has been set. Although the parties have certainly expended time and resources in this matter, it appears that the bulk of the expenses and time to be invested by the parties in this matter is still to come. The parties have indicated that they are likely to have significant objections to written discovery requests and responses as indicated by their numerous requests for an extension of the deadline set by the Court for raising objections to written discovery. *See* Dkt. Nos. 47, 51, 57, 67, 74, 81. Furthermore, the recently filed motions related to the enforcement of subpoenas indicate that the remainder of the discovery process is unlikely to run smoothly. *See* Dkt. Nos. 76, 78. Accordingly, it appears to the Court that a stay of this matter at its present stage pending the outcome of the IPR proceedings will save the parties and the Court from a possibly unnecessary and likely significant expenditure of resources. Therefore, the Court finds that this factor weighs in favor of Plaintiff's motion to stay.

Based upon the foregoing, the Court finds that one factor weighs against a stay and two weigh in favor. Accordingly, Plaintiff's motion for a stay [Dkt. No. 34] is **GRANTED**.

**III.    CONCLUSION AND ORDER**

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 13th day of June, 2018,

**ORDERED** that Plaintiff's motion to stay [Dkt. No. 34] is **GRANTED**; and it is further

**ORDERED** that this matter shall be **STAYED and ADMINISTRATIVELY TERMINATED** pending the completion of *inter partes* review before the PTAB; and it is further

**ORDERED** that the parties shall promptly advise the Court in writing when the PTAB issues a decision in the *inter partes* review proceeding; and it is further

**ORDERED** that all pending motions [Dkt. Nos. 74, 76, 78, 81] shall be **ADMINISTRATIVELY TERMINATED**.

    s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**